**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **MIGUEL ALEMAN,**<br><br>               **Plaintiff,**<br><br>     v.<br><br>**U-HAUL CO. OF ILLINOIS, INC.,**<br><br>               **Defendant.** | **Case No. 06 C 0726**<br><br>**Hon. Harry D. Leinenweber** |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Miguel Aleman (hereinafter, "Plaintiff") brought this action against U-Haul Company of Illinois, Inc. (hereinafter, "Defendant") alleging that Defendant violated the Family Medical Leave Act (hereinafter, "the FMLA") when it terminated him for taking leave to care for his ailing stepfather. Both Plaintiff and Defendant have moved for summary judgment.

### I.   BACKGROUND

The following facts are taken from the parties' 56.1 statements; factual disputes are noted.

Beginning in 1994, Plaintiff worked at Defendant's Alsip, Illinois facility as a transmission specialist maintaining Defendant's fleet of vehicles. Shop Manager Edward Roderick Bolden ("Bolden") was Plaintiff's direct supervisor after 1999. After April 20, 2005, Jim McFarland ("McFarland") was U-Haul Company of South Chicago President and worked throughout southwest Cook County and the suburbs (including the Alsip facility). Until April 28,

2003, Plaintiff received regular merit increases; in the period between April 28, 2003 and July 28, 2005, Plaintiff received only one merit increase due to a large number of absences.

Beginning in 2003, Plaintiff's stepfather, Cruz Manuel Cartagena ("Cartagena"), began to have health problems. Plaintiff has never met his biological father, and Cartagena raised Plaintiff from three years of age. Plaintiff refers to Cartagena as his "father." Plaintiff asserts that Cartagena's health problems caused him to miss work on several occasions.

The parties agree that Defendant is an "employer" and Plaintiff was an "eligible employee" for FMLA purposes. Plaintiff, however, asserts that he was never provided a copy of Defendant's FMLA policy or any type of FMLA forms prior to his termination, and that no one told him of his FMLA rights. Defendant's employee handbook mentions that "leaves of absence may be granted for . . . family medical leave as provided by the FMLA for 1993 (see posted Department of Labor notice)" and indicates that requests for such leave must be accompanied by documentation. A Department of Labor FMLA notice was posted in the facility's break room.

The parties dispute Defendant's attendance and call-off policies. Plaintiff asserts that Defendant did not have a formal attendance policy, but that employees could be absent by "calling off" on days they sought to miss. Defendant, however, contends

that there was a formal policy, and that employees could call in sick via the "call off" procedure, but must request other time off in advance. The parties agree that it is Defendant's practice to terminate employees after three days of "no call/no show."

Plaintiff began to miss work in 2003. There is no dispute that Plaintiff's job called for him to work 40 hours a week. There is no dispute that Plaintiff missed a significant amount of work in 2004 (500 hours) and early 2005 (83 hours before April 1). Plaintiff asserts that he "called off" during this period without discipline, but Defendant asserts that Bolden pulled Plaintiff aside to speak to him about his attendance several times.

Plaintiff met with Bolden to discuss his attendance issues on April 19, 2005. Plaintiff asserts that at this meeting, he told Bolden that he had to call-off because of "his father's serious illness" and that his father was "in and out of the hospital." Notes taken by an employee of Defendant at this meeting, however, indicate that Plaintiff gave three explanations for his absences: he had a medical problem, he had problems at home, and he was having problems with his "old man." No Defendant employee inquired further about Plaintiff's father or mentioned the FMLA in any way. Following this meeting, Plaintiff continued to miss work. Plaintiff asserts that the absences were approved, but Defendant claims otherwise.

The following is a summary of Plaintiff's absences after this meeting:

| Pay Period | Hours Worked | Hours Missed/Source |
| --- | --- | --- |
| April 25-May 8 | 75.75 | 4 Personal Hours |
| May 9-May 22 | 72 | 8 Sick Hours |
| May 23-June 5 | 64 | 6 Sick/8 Holiday Hours |
| June 6-June 19 | 71 | 9 Hours/Source Not Provided |
| June 20-July 3 | 59 | 21 Hours/Source Not Provided |
| July 4-July 17 | 63.25 | 8 Holiday/ 8.75 Hours/Source Not Provided |
| July 18-July 31 | 55.5 | 24.5 Hours/Source Not Provided |

Cartegena was scheduled for open heart surgery on August 1, 2005 (but the surgery was rescheduled and ultimately took place on a later date). It is undisputed that Plaintiff requested time off in late July 2005 and mentioned that his father was going to have surgery. Bolden testified in his deposition that Plaintiff requested only July 29 off and then was not heard from again until he returned to work on August 11, 2005. Plaintiff testified that he checked in with both Bolden and McFarland requesting more time that Bolden said it was okay, and that Cartagena's physician had faxed over various documents to Bolden's attention indicating that Plaintiff was needed at the hospital. Bolden denied receiving any phone calls or documents between July 29 and August 11, but Defendant produced the faxed documents in the course of discovery, which Bolden claims to have received after August 11.

Plaintiff returned to work on August 11, 2005 and was terminated. Some time afterwards, Plaintiff contacted U-Haul's

Human Resources Department and eventually provided medical documents regarding Cartegena's surgery. Plaintiff was reinstated.

Before he could return to work, Plaintiff was required to meet with McFarland. McFarland asked Plaintiff if he needed more time off to spend with Cartagena. Plaintiff was informed that he had a significant absentee problem outside of the time missed due to Cartagena's surgery. At this meeting, a new absence policy was set for Plaintiff. Plaintiff asserts that this policy allowed him to continue to "call off" on a day he wished to miss, but required that he speak to Bolden or the next "white shirt" – presumably another member of management or an office employee – in order to do so. Defendant, however, contends that Plaintiff was told he needed to speak to Bolden in order to request time off, but admits that Plaintiff was not given Bolden's cell phone number at the meeting.

When Plaintiff returned to work, he was paid for the time he had missed as if he had taken vacation time (even though Plaintiff did not have sufficient vacation time accrued). He returned at the same pay rate, but the structure of the shop had changed from an individual to a team concept for budgetary reasons. After returning to work, Plaintiff discovered that he no longer had his benefits (including medical insurance and participation in the Company's 401(k) plan). Defendant contends that Plaintiff was treated as a rehire upon reinstatement, and that he thus needed to re-enroll in these benefit plans. Plaintiff believed he had to

call Human Resources to resolve the issue. Plaintiff thus "called off" on September 26, 2005, intending to use ten personal hours he had available at that time. Plaintiff called in twice, attempting to speak to Bolden, and left messages for Bolden with Walter Podurski and Gerald Hall. It is undisputed that Plaintiff never spoke to Bolden, did not call his cell phone, and did not have that number. Defendant contends that Plaintiff could have gotten Bolden's cell phone from almost anyone at U-Haul.

Plaintiff returned to work on September 27, 2005 and was terminated. Plaintiff's termination paperwork indicated that he was terminated for "excessive absenteeism," but McFarland admits that Plaintiff would not have been terminated had he spoken with Bolden directly on September 26. One week later, Cartagena died.

## II. **LEGAL STANDARD**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56©. A fact is material if it could affect the outcome of the suit under the governing law, and a dispute is genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must view all the evidence and any reasonable inferences

therefrom in the light most favorable to the non-moving party. *See Miller v. American Family Mut. Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000).

### III. <u>DISCUSSION</u>

#### A. Plaintiff's Interference Claim

Both Plaintiff and Defendant have moved for summary judgment on Plaintiff's Interference claim. In order to prevail on an FMLA interference claim, an employee must establish that: "(1) he was eligible for the FMLA's protections0; (2) his employer was covered by the FMLA; (3) he was entitled to leave under the FMLA; (4) he provided sufficient notice of his intent to take leave; and (5) his employer denied him FMLA benefits to which he was entitled." *Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir. 2006).

Under the FMLA, an eligible employee is entitled to 12 weeks of unpaid leave to care for a parent with a "serious health condition." 29 U.S.C. § 2612(a)(1)©. The parties do not dispute that Defendant is an employer, Plaintiff is an eligible employee, that Mr. Cartagena qualifies as a "parent" under the FLMA, and that open heart surgery qualifies as a "serious health condition." Thus, Plaintiff has met the first three prongs, and only the final two need be evaluated by this Court.

##### *1. Sufficiency of Notice to Employer*

Defendant moves for summary judgment on the basis that Plaintiff failed to give sufficient notice that the FMLA applied.

- 7 -

Plaintiff argues that the undisputed facts establish that Plaintiff gave sufficient notice as a matter of law.

Employers covered by the FMLA are required to grant leave to eligible employees to care for the employee's parent with a serious health condition. 29 C.F.R. § 825.112(a)(3). Employers are entitled to some sort of notice that will inform them that the FMLA may apply. *Phillips v. Quebecor World RAI, Inc.*, 450 F.3d 308, 311 (7th Cir. 2006). Once requisite notice has been provided, it is the employer's responsibility to designate leave as FMLA-qualifying; if notice is not given, then the employer may deny leave even if the employee otherwise qualified. *Id.* at 311. Thus, if Plaintiff's notice was insufficient, then Defendant was not required to give FMLA leave.

"When providing notice of leave, an employee is not required to expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed." *Id.* at 311. An employer, is, however, "entitled to the sort of notice that will inform [it] that the FMLA may apply." *Id.* The "employee's notice obligation is satisfied so long as he provides information sufficient to show what he *likely* has a FMLA-qualifying" situation. *Burnett v. LFW Inc.*, 472 F.3d 471, 479 (7th Cir. 2006); *see also Collins v. NTN-Bower Corp.*, 272 F.3d 1006, 1008 (7th Cir. 2001). Once such notice is given, "the employer should inquire further of the employee if it is necessary to have more information about

whether FMLA leave is being sought by the employee, and obtain the necessary details of the leave to be taken." 29 C.F.R. § 825.208(a).

An employee's bare assertion that he is "sick" is insufficient. *Burnett*, 472 F.3d at 479. In *Phillips*, the Seventh Circuit held that an employee did not give her employer sufficient notice by telling her employer that "she had been seen at the health center" and "she was leaving because she was 'sick.'" *Id.* at 311-12. There, the Court held that "an employee's reference to being 'sick' . . . does 'not suggest to the employer that the medical condition might be serious or that the FMLA otherwise could be applicable." *Id.* at 312.

In *Burnett*, the Seventh Circuit noted that the "surrounding context" of an employee's request for leave must also be considered. *Burnett*, 472 F.3d at 479; *see also Collins*, 272 F.3d at 1008-09. There, the employee had not yet been diagnosed with prostrate cancer and had remarked that he was "sick" and "wanted to go home." *Id.* The Court held that the employee had done more than declare "I'm sick" because, over a period of four months, he had indicated that he was suffering from a weak bladder that was severe enough to preclude a transfer of assignment, he was "on a trajectory of increased medical visits and testing," he had had a prostrate biopsy, and repeatedly indicated that he felt sick and

that his condition might be similar to his brother-in-law's cancer. *Id.* at 480.

It is undisputed that Plaintiff verbally informed Defendant that his father was scheduled for surgery. Although Bolden denies this, Defendant admitted it in its response to Plaintiffs' Request to Admit. As such it is admitted absent court-permitted withdrawal or amendment – which has not happened here. *See* FED. R. CIV. P. 36(b). The parties do dispute, however, what Plaintiff had previously told Bolden regarding his father (Plaintiff alleges, and Defendant denies, that he told Bolden that his father was in and out of the hospital at the April 19, 2005 disciplinary meeting). As the Seventh Circuit cautioned in *Burnett*, there are no "categorical rules regarding what constitutes adequate notice." *Id*. at 479 (internal quotations omitted). As such, this Court is reluctant to hold that a reference to "surgery," without more (for example, that care after surgery is required, that the surgery is major or minor, or whether the surgery is an inpatient or outpatient procedure), is sufficient notice that the FMLA may apply, especially where the reference to surgery may have been coupled with a request for only one day off. *See* 29 C.F.R. § 825.114(a)(2)(2000)(serious health condition includes a period of incapacity of more than three consecutive days or period of incapacity due to chronic serious health condition). "Adequacy of notice is a fact-rich question . . . perhaps best resolved by the

trier of fact, particularly, where, as is the case here, the employer and employee dispute the quantity and nature of communications regarding the employee's illness." *Id.* at 479 n.4. It seems to this Court that if the parties did not dispute the prior communications – that Cartegena was in and out of the hospital - then notice would have been sufficient as a matter of law. With these facts in dispute however, this Court will not enter summary judgment at either side's behest.

Plaintiff argues that even if he did not meet the notice requirements, he did not need to because Defendant failed to provide written notice of FMLA requirements in its employee handbook. The regulation clearly states that an employee handbook or "other document" must provide information regarding the FMLA. 29 C.F.R. § 825.301(a)(1). The parties dispute the extent to which FMLA information was made available to Defendant's employees in Defendant's handbook and in other documents posted in the break room.

Additionally, Plaintiff's argument is not borne out by the law. The regulation states that "if an employer fails to provide notice in accordance with the provisions of this section, the employer may not take action against an employee for failure to comply with any provision required to be set forth in the notice." *Id.* at § 825.301(f). Section 825.301, however, speaks of two separate kinds of information regarding the FMLA that must be

provided to employee – "information" in employee handbooks (Subsection (a)) and "notice" of specific FMLA requirements and workings provided after an employee has provided his employer with sufficient notice that the FMLA might apply (Subsection (b)) - and it appears that Subsection (f) refers to the Subsection (b) "notice" only. *Id.* at § 825.301. If it applied to the first, it essentially allows an employee to demand FMLA leave (after the fact) without having given his employer any indication whatsoever that the FMLA might apply - a conclusion this Court is loathe to assume was intended due its patent impracticality. If Subsection (f), however, is read to apply only to Subsection (b) notice, then it permits an employee who is never provided *specific instructions regarding the furnishment of medical certifications* (for example) to still obtain FMLA leave if he has otherwise provided his employer with sufficient notice. This reading makes much more sense. As such, this Court finds that summary judgment cannot be entered in either Plaintiff or Defendant's favor on the interference claim.

### *2. Interference*

Although summary judgment on behalf of the Plaintiff is precluded by this Court's finding regarding the notice requirement, summary judgment on behalf of Defendant is possible if the undisputed facts show that Defendant did not interfere with Plaintiff's FMLA rights, then summary judgment is appropriate in

Defendant's favor. Plaintiff asserts that Defendant interfered with his FMLA rights by terminating him on August 11 and by failing to reinstate his benefits upon his reinstatement.

"A claim under the FMLA for wrongful termination can be brought under either a discrimination/retaliation or interference/entitlement theory; the difference is that the first type of claim requires proof of discriminatory or retaliatory intent while the latter requires only proof that the employer denied the employee his or her entitlements under the Act." *Kauffman v. Federal Exp. Corp.*, 426 F.3d 880, 884 (7th Cir. 2005). An employer interferes with an employee's FMLA rights by failing to respect them; *i.e.*, by terminating the employee, revoking his pre-leave privileges or benefits, or failing to reinstate the employee after leave. *See id.*; *Diaz v. Fort Wayne Foundry Corp.*, 131 F.3d 711, 713 (7th Cir. 1997); *Harrel v. U.S. Postal Service*, 445 F.3d 913, 919 (7th Cir. 2006). Under the FMLA, an employee "has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period." *Crouch v. Whirlpool Corp.*, 447 F.3d 984, 986 (7th Cir. 2006)(citing 29 C.F.R. § 825.216(a)). Thus, any failure to reinstate an employee to the same benefits and conditions of employment following FMLA leave constitutes interference.

The parties agree that upon Plaintiff's return on August 11, 2005, Plaintiff was terminated and his employee benefits were discontinued. The parties further agree that Plaintiff was later reinstated and received back pay for 121 hours of work. Upon reinstatement, the parties agree that Plaintiff was no longer enrolled in Defendant's 401(k) plan or health insurance.

Defendant argues that the undisputed facts show that Plaintiff was reinstated and received compensation for his absence and for the period of time before his reinstatement, and that therefore, no interference occurred. Essentially, Defendant's argument is that subsequent reinstatement and back pay cured Plaintiff's termination. The Seventh Circuit has rejected a similar argument in the Title VII context. *See Phelen v. Cook County*, 463 F.3d 773 (7th Cir. 2006). There, the Seventh Circuit noted that the fact that "Phelen was reinstated to her position . . . does not negate the fact that her termination constituted an adverse employment action." *Id.* at 780. The Court continued, "we decline to endorse a rule that would allow employers to escape liability by merely reinstating the aggrieved employee . . . after termination . . . Such a rule could create an unintended economic incentive for employers to reinstate an employee who files a discrimination suit as a means to avoid Title VII penalties . . . " *Id.* While there are factual differences between this case and *Phelan*, (most notably the legal theories involved and the fact that Phelan was reinstated

only after she had sued), this Court believes that holding that Defendant cured Plaintiff's termination by reinstating him would set a dangerous precedent. That is not to say, of course, that Plaintiff's remedies would not be affected by his reinstatement and back pay. As such, summary judgment in Defendant's favor is not appropriate.

Defendant and Plaintiff also disagree as to whether Plaintiff's FMLA rights were interfered with because Plaintiff was required to re-enroll in his benefits. Under the FMLA, when an employee returns from leave, his benefits must be "resumed" and he must not be required to "requalify" for his benefits. 29 C.F.R. § 825.215(d)(1). "For example, if an employee was covered by a life insurance policy before taking leave but is not covered or coverage lapses during the period of unpaid FMLA leave, the employee cannot be required to meet any qualifications, such as taking a physical exam, in order to requalify. . . ." *Id.* Although the parties agree that Plaintiff needed to re-enroll, the record does not specify what the re-enrollment process required. As such, this Court cannot determine whether this constituted interference.

### B. Plaintiff's Retaliatory Discharge Claim

Defendant and Plaintiff have also moved for summary judgment on Plaintiff's Retaliatory Discharge claim.

### *1. Plaintiff's Arguments for Summary Judgment*

Plaintiff's brief argues for summary judgment based on two separate lines of reasoning, but cites *no* cases and makes *no* legal argument in their support. The brief fails to address the *prima facie* case required to prove retaliation or provide the *McDonnell Douglas* framework (which might also be applicable in this case). Instead, the brief re-narrates what Plaintiff asserts are the undisputed facts of the case without tying them to a legal theory. As such, this Court will not consider Plaintiff's "arguments."

### *2. Defendant's Arguments for Summary Judgment*

Defendant argues that summary judgment is appropriate because Plaintiff cannot establish a *prima facie* case of retaliatory discharge. In order to state a claim for retaliatory discharge, a plaintiff must establish: (1) he engaged in a protected activity; (2) his employer took an adverse employment action against him; and (3) there is a causal connection between his protected activity and the adverse employment action. *King v. Preferred Technical Group*, 166 F.3d 887, 891 (7th Cir. 1999). Defendant contends that Plaintiff cannot show that his termination was motivated by an impermissible retaliatory animus. *Horwitz v. Board of Educ. of Avoca School Dist. No. 37*, 260 F.3d 602, 616-17 (7th Cir. 2001).

The right to reinstatement under the FMLA is not absolute and the statute does not confer benefits to which an employee would not be entitled had the employee not taken leave. *See, Ogborn v.*

*United Food and Commercial Worker's Union, Local No. 881*, 305 F.3d 763, 768 (7th Cir. 2002). As such, an employer may terminate employees for poor performance if it would have done so regardless of FMLA leave. *See id.* In *Ogborn*, an employee who was responsible for processing grievances took FMLA leave. *Id.* Prior to taking leave, the employee had been counseled and suspended for failing to process grievances in a timely fashion. *Id.* While the employee was on leave, the employer discovered additional grievances that had not been processed and fired the employee. *Id.* The district court entered summary judgment in the employer's favor because the employee's termination was not related to or in retaliation for FMLA leave. *Id.*

Defendant argues that Plaintiff cannot show a causal connection between his termination and his FMLA leave because Plaintiff was terminated for excessive absenteeism that extended as far back as 2004. Plaintiff counters that all of his absences were FMLA qualifying, and that thus, Defendant has admitted that it based his termination on FMLA leaves. While the Court views Plaintiff's argument with some incredulity (certainly every absence dating back a year and half was not FMLA eligible), there are not sufficient undisputed facts in the record from which this Court can determine that Defendant based Plaintiff's termination on some sufficient number of non-FMLA absences. Of course, absent notice that the FMLA might apply, Defendant is not required to designate

or treat absences as FMLA leave even if the absences so qualify. *See Phillips*, 450 F.3d at 311. But the parties dispute the facts surrounding the 2004 and 2005 absences. Plaintiff claims that he had notified Defendant contemporaneously that his absences were due to Cartegena's heart problems and hospital stays and informed Defendant of this fact at the April 19 disciplinary meeting. Defendant admits only that it was made aware of Cartegena's surgery shortly before Plaintiff's July 2005 absence and prior to that knew only that Plaintiff had problems with his father. Thus, genuine issues of material fact preclude this Court from entering summary judgment in Defendant's favor on a direct proof basis.

### IV. <u>CONCLUSION</u>

For the reasons stated herein, the Court denies both Plaintiff's and Defendant's Motions for Summary Judgment.

**IT IS SO ORDERED.**

                                                                      Harry D. Leinenweber, Judge
                                                                      United States District Court

DATE: May 18, 2007